## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ROY DALE NEEL,                    )
                                 )
           **Plaintiff,**            )
                                 )
v.                               )        **Case No. CIV-17-66-RAW-SPS**
                                 )
NANCY A. BERRYHILL,              )
**Acting Commissioner of the Social**  )
**Security Administration,**          )
                                 )
                                 )
          **Defendant.**            )

## REPORT AND RECOMMENDATION

The claimant Roy Dale Neel requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on July 11, 1975, and was forty years old at the time of the administrative hearing (Tr. 36).  He completed the tenth grade, and has worked as a car salesman, gambling dealer, and fast food manager (Tr. 48-49, 220).  The claimant alleges he has been unable to work since October 31, 2013, due to heart problems, obstructive sleep apnea, high cholesterol, high blood pressure, narcolepsy, cataplexy, carotid artery disease, heart stents, and obesity (Tr. 219).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 20, 2013.  His applications were denied.  ALJ Richard J. Kallsnick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated August 19, 2015 (Tr. 8-16).  The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found the claimant retained the residual functional capacity ("RFC") to perform the a limited range

of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he is able to lift/carry/push/pull no more than twenty pounds occasionally and ten pounds frequently, stand/walk for four hours out of an eight-hour workday, and sit for six to eight hours out of an eight-hour workday, all with normal breaks.  The ALJ further noted that the claimant has a Tenth Grade education with good ability to read, write, and use numbers, and that he could use his hands for hand controls and feet for foot controls; could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; had no limitation in stooping, kneeling, crouching, and crawling; must avoid hazards such as moving machinery and dangerous heights, and should not drive a motor vehicle due to cataplexy.  Furthermore, the ALJ determined that the claimant was afflicted with symptomatology from a variety of sources of sufficient severity as to be noticeable to him at all times, but that he would nonetheless be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily.  Finally, the ALJ noted that the claimant's medications did not preclude him from functioning at the light level, as restricted, and that the claimant would remain reasonably alert to perform required functions in the work setting (Tr. 11-12).  The ALJ thus concluded that the claimant could return to his past relevant work as a car salesperson and card dealer/gambling dealer (Tr. 15).

## Review

The claimant alleges that the ALJ erred by:  (i) failing to properly assess the opinion of his treating physician, Dr. Newnam; and (ii) failing to properly assess his

RFC. The undersigned Magistrate Judge agrees with the claimant's first contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of narcolepsy with cataplexy, carotid artery disease, status post stent implants, and obesity, as well as the nonsevere impairments of obstructive sleep apnea and hypertension (Tr. 11). Relevant medical records reflect that the claimant had a small non-ST elevation myocardial infarction and underwent stenting in June 2010 (Tr. 301). He again reported chest pain and shortness of breath in August 2013 and he underwent further cardiac catheterization, which resulted in a finding that the claimant had mild coronary artery disease, widely patent circumflex and OM2 stent, normal LV function, and that his chest discomfort did not appear to be due to obstructive coronary artery disease (Tr. 334-340). Follow-up testing in February 2014 revealed essentially normal heart functioning (Tr. 400).

The claimant reported, *inter alia*, excessive daytime sleepiness and fatigue to his treating physician Dr. Michael Newnam, and was referred for a sleep study which resulted in a diagnosis of obstructive sleep apnea syndrome and possible narcolepsy in 2012 (Tr. 362). Further testing was consistent with narcolepsy (Tr. 367). In March 2013, the claimant scored a 19 on the Epworth Sleepiness Scale, indicating severe excessive daytime sleepiness (Tr. 384).

On March 5, 2013, Dr. Newnam wrote a letter stating that he had been following the claimant since October 2012, and that the claimant's "severe decrease in alertness and propensity to fall asleep with normal activities of the day certainly is a disability. These

conditions make any gainful employment very difficult.  The patient has difficulty with focus, concentration and staying awake while trying to do work.  The patient is currently on Adderall to try to improve alertness but unfortunately he still continues to have symptoms despite treatment." (Tr. 385).

On July 26, 2013, Dr. Newnam completed a "Sleep Disorders Medical Source Statement," in which he indicated that the claimant's diagnoses included narcolepsy, obstructive sleep apnea, and cataplexy, with only a fair prognosis (Tr. 374).  He said that these attacks occurred ten to twenty times per day, lasting one to fifteen minutes each, often precipitated by quiet and sitting (Tr. 374).  He cited the objective testing used to confirm these diagnoses, and noted that the claimant would need unscheduled breaks because he would fall asleep multiple times throughout the day, and that he was likely to be off task 25% or more of the day as a result (Tr. 375-376).  He indicated that the claimant needed to avoid all exposure to power tools, and avoid even moderate exposure to driving, heights, moving machinery, working alone without supervision, and routine/repetitive tasks (Tr. 376).  However, he found the claimant was capable of low stress work (Tr. 376).  Additionally, Dr. Newnam stated that the claimant's severe tiredness and dozing will impair focus, concentration, and task completion (Tr. 377).  On June 29, 2015, Dr. Newnam wrote that the claimant's condition had not significantly changed from his previous statements given in 2013 (Tr. 451).

Treatment notes from Dr. Newnam in October 2013 reflect that the claimant was consistently wearing his CPAP machine and his narcolepsy with cataplexy, hypersomnia, and insomnia, and obstructive sleep apnea were considered stable, although he also

continued to score a 14 on the Epworth sleep scale, indicating moderate excessive daytime sleepiness (Tr. 379-382).

On February 24, 2014, at a follow-up appointment at the Oklahoma Heart Institute, the claimant scored an 18 on the Epworth Sleepiness Scale (for severe excessive daytime sleepiness), and reported that his sleep continued to be disjointed despite 100% compliance with his CPAP, although Adderall continued to help with daytime alertness (Tr. 402).  Furthermore, the claimant noted frequent cataplexy two or more times a day at times of excitement, laughter, or anger (Tr. 402).  Records also reflect that the claimant was advised against drowsy driving and to schedule naps to help manage his narcolepsy along with the Adderall (Tr. 404, 413, 468).  The claimant continued to report benefits from use of Adderall, but that he could tell when it wore off and that sometimes the regular dosage was not sufficient to overcome his symptoms (Tr. 466).

On June 16, 2015, the claimant was found to have a "sizable disk herniation" at L5-S1 (Tr. 520, 522).

State reviewing physicians found both initially and on reconsideration that the claimant could perform light work, could occasionally climb ramps/stairs but never climb ladders/ropes/scaffolds, and must avoid all exposure to hazards (Tr. 89-91, 106-108).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record.  In particular, the ALJ noted the claimant's "long history" of narcolepsy with cataplexy, but focused on a February 2014 note indicating that the claimant was doing well overall, that his sleep schedule had improved, and that Adderall helped prevent him from falling asleep during the day

(Tr. 13). The ALJ further determined that the claimant was not credible, because he testified he was unable to perform work activities but was acting as a stay at home dad, including performing household chores, and driving his children as necessary (Tr. 14). The ALJ specifically stated that the records did not indicate the claimant had been told not to drive a vehicle, and found that the lack of driving restriction reduced his credibility (Tr. 14). The ALJ summarized Dr. Newnam's July 2013 letter but provided no analysis of it and made no mention of his other opinions, then gave great weight to the opinions of the state reviewing physicians (Tr. 15). The ALJ then concluded that the claimant was not disabled.

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the

-8-

physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physician. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he summarized only one opinion from Dr. Newnam, and ignored a majority of his treatment notes as well as his later statement that the claimant's condition had not changed. Furthermore, this was an improper assessment where the ALJ completely discounted the repeated notations in the record regarding the claimant's continued daytime sleepiness despite medication, as well as problems with concentration and focus. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may

not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to conduct a proper analysis with regard to the evidence from the claimant's treating physician and further refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proper analysis of the claimant's RFC in light of *all* the evidence and *all* of the claimant's impairments. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of February, 2018.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**